Ms. Kenney, before you, I guess, start your formal argument, just probably for my sake, but probably for us all, you know, this case has had a lot of action in it, so to speak, so just a thumbnail capsule of kind of the status of sort of where things are procedurally, so we know where you're at right now. I mean, nothing long, but just kind of a little preamble to what's the status of litigation as well as things. Go ahead. My name is Joan Kenney. I'm general counsel for Amerijet. We are here today on two consolidated cases. The procedural status of them is, the first is a mandamus petition challenging an order to reopen a closed case by the district court. The second is a direct appeal under 1292 of an anti-suit injunction order issued by the district court restraining Amerijet from bringing suit in any other court with respect to disputes with zero gravity. That anti-suit injunction was issued by the district court after Amerijet had already brought another suit on disputes it had with zero gravity. Amerijet filed suit on July 28th of 2014 in the Southern District of Florida for payments owed under two contracts with zero gravity for the return of parts and equipment and FAA approved manuals and for misappropriation of trade secrets. And so the district court in the Southern District of Texas issued its order restraining that suit after the suit had been brought. Once the suit was brought and the order issued and we had filed our appeal, we did nothing to advance the case in the Southern District of Florida until after zero gravity took action to advance that case. Zero gravity did not answer, did not move to stay that case before the Southern District of Florida. Instead, zero gravity filed a motion to dismiss or an alternative to transfer. But the transfer motion was an alternative. The motion to dismiss was based on 12B6, which is a merits-based motion to dismiss, and to transfer based on the first file, I mean to dismiss based on the first file rule. So when zero gravity moved to dismiss on the merits for failure to stay the claim in the Southern District of Florida, we responded that we had in fact stated a claim that the first file rule to us did not justify dismissal of the case in the Southern District of Florida and that transfer under 1404, which was the only basis for transfer that zero gravity asserted in the Southern District of Florida, that the criteria for transfer for convenience of parties and witnesses did not apply. How is that even before us? That's not before us. No, it's not. I'm not doing it with the brevity that I think... Oh, you're explaining the procedural history of the entire dispute between the parties, but that's, okay. So the Southern District of Florida did not rule on that motion until about two weeks ago when the Southern District of Florida transferred the case back to the Southern District of Texas on the basis of the first file rule. Now it's just pending there in the Southern District, awaiting further action, right? Yes. It's just back in the Southern District of Texas. That transfer to the Southern District of Texas did not affect the appeal of the anti-suit injunction. That's still very much before this court for decision. All right. That's helpful. So it's our position that the anti-suit injunction is contrary to law and an abuse of discretion for four reasons. The first is that the time that the district court in Texas issued that anti-suit injunction, it no longer had subject matter jurisdiction. It could not issue that order because it had no jurisdiction over the case. It didn't have jurisdiction for two reasons. First, we had voluntarily dismissed that case prior to an answer or a summary judgment motion under Rule 41A1AI. It seems to me that the question that this case arguably presents is if that answer was, if what was filed in Texas in the state court by zero gravity was in fact an answer under Texas law, then does that mean that the district court did, that your motion to dismiss 41, whatever it is, A, is it, was not effective? Actually, Your Honor, I don't believe that this court needs to decide that question. Well, that's always good. Why? Because after our notice of voluntary dismissal, the district court issued its own final order of dismissal with prejudice. The district court issued that order on June 4th. Right, but the trouble was it maintained jurisdiction to resolve settlement disputes or whatever. And so. But two separate questions. One is, was the case dismissed? And it was dismissed by the judge. So the court doesn't even have to decide that 41 question because the judge dismissed it. The judge dismissed it, and then the second question is, did that case get revived? And our view is it did not get revived because the US Supreme Court, in the Coconin case, and this court in the small biz pros case, both stated that in order to retain jurisdiction to enforce a settlement, there are two requirements that must be followed. And the judge's dismissal order stated it was dismissing based on a settlement, but was retaining jurisdiction. And those two requirements. To enforce the settlement. To enforce the settlement, yes. And those two requirements under Coconin and small biz pros are first, that the dismissal order of the court must either expressly incorporate by reference the terms of the settlement itself, or must actually embody those terms in the settlement agreement. That's the first requirement. And the second requirement is that all parties must consent to the court's retaining jurisdiction to enforce the settlement. Neither of those requirements were met here. The district- You told Judge Hughes, well, we didn't consent to you retaining jurisdiction. We did not, nor did Zero Gravity. There's nothing in the record that says they, and the judge also said he didn't even know what the terms of the settlement were. He stated that in a hearing on August 6th. He said he had no idea what the terms of the settlement are. So he could not have either expressly incorporated those settlement terms by reference or embodied them in the settlement in the order of dismissal. They're not in the order of dismissal. So the Supreme Court was very clear in the Coconin case. And in small biz pro, this court was also very clear. That those two requirements must be met. That there is no ancillary jurisdiction to enforce a settlement agreement. You must follow what the Supreme Court said you must follow. And interestingly, in both of those cases, the issue was the return of records that was part of the settlement. And in this case, Zero Gravity moved to enforce obligations and an attempt to reopen the case based on a contention that we had not returned records to them that they said they were owed. So it's our belief that the court lost jurisdiction when it closed the case by its final order of dismissal on June 4th, pursuant to a settlement. And it did not regain jurisdiction when there was a motion to enforce the settlement. Because the settlement terms were not embodied or incorporated into the final dismissal order. And there was not consent of all parties to retaining jurisdiction to enforce the settlement. But if somehow this court could get past that hurdle of the dismissal and the failure to revive the case, the requirements for an anti-suit injunction also were not met here under the first filed rule. The first filed rule says there have to be, again, two requirements. There must be two pending cases, not one closed case and one open case. At the time that the judge issued the anti-suit injunction on August 6th, the case in front of Judge Hughes had been closed for two months. Let me ask you a question to sort of cut to the bottom line, and I know your argument's good, so I don't mean to cut you off. But opposing counsel says they're perfectly happy to proceed in front of Judge Hughes on this transferred case. And the transferred case was filed in Florida, and they're perfectly happy. And I take it that that transfer order has not been appealed. It's not an appealable order. Once the transfer's been effected. Well, if that were the only thing that controlled. But it did not decide the merit of the transfer. It didn't transfer under 1404A, that issue's not here. It transferred in order to essentially maintain the status quo of the appeal here on whether that anti-suit injunction was a proper order. So what my question is, that case is now pending in front of Judge Hughes, and opposing counsel says they're happy to be there, they'll be happy to litigate. So what's your position? We're not happy to be there. Not happy. It is our privilege to choose the forum in which we bring our suit, so long as there's venue there. And this court has said repeatedly that forum shopping is as American as the Constitution. And we don't want to be in front of Judge Hughes for two reasons. First, in the post-dismissal proceedings, he ordered us to turn over our intellectual property to zero gravity. He ordered us to provide additional information that we aren't required to provide under the FAA regulations about our maintenance program. And that's of deep concern to us. And secondly, he showed a disregard for the regulatory environment in which we operate by not caring that we were being directed to provide information about our maintenance program so that zero gravity could use that to try to qualify with a different air carrier to continue this parabolic flying. The parabolic flying is, it's dangerous, and we are the only air carrier that has ever been approved by the FAA to do it. And now that we have terminated our business relationship with zero gravity, because frankly, we were concerned that they were interfering with our safe operation in communications they were having with NASA and with the FAA behind our back. We don't want them using our maintenance program and our training and our other programs developed for the operation of that parabolic flying because we're concerned that they're going to have a serious safety incident. Because we operate 727 aircraft all the time. We have a fleet. We have the largest fleet of 727 aircraft that's operating in the United States now. We have our own mechanics in-house that maintain that aircraft. And our pilots fly that aircraft regularly in challenging environments, into the Caribbean, around volcanoes and landing on airstrips that if you overshoot the runway, you end up in the sea. So they're uniquely qualified to do this parabolic flying. So you don't want to be in front of Judge Hughes as the bottom line. That's right. And we have the right to choose our form for our claims. But what, I mean, it just strikes me, it has struck me from the beginning of this whole case, there's a vast amount of money being spent, certainly by the other side and apparently by your company as well, on legal fees. And surely there has got to be some way to resolve this thing. I mean, that's, but I guess, you know, that's probably not appropriate. Well, we attempted to mediate. We told them we weren't going to go to execute on the TRO we got in the state court in Texas if they would come mediate with us. But we have not had any good result in trying to resolve this. So we are after our property and our money following the termination of our business relationship. And we don't see any way to get that at this point without pursuing our legal rights. If you don't, if you, I have two questions. First one is, so even if you win though, you're still going to be in the other case before Judge Hughes. So you don't get what you want by winning this case that's currently before us. We don't think so. We think if the anti-suit injunction is overruled or reversed, that on remand, this court can direct the district court to retransfer the case back to Florida. What authority do you have for that proposition? The All Writs Act and the cases that we cited in our supplemental letter that was filed last Friday. This court has jurisdiction to do justice and direct the court to retransfer that case. Okay. And also, if we do have to get, if we don't believe the argument, we're not persuaded by the argument that the case was already dismissed by the court and we have to get to the issue of whether there was an answer under state court, do you concede that under state court law that that would be an answer? No, Your Honor. Do you have a case for that? Because it seems to me that that counts as an answer under state law. We did cite some cases. I think Rupert is the case that we cited in the state court, but we also cited the Texas Rules of Civil Procedure. And as you know, as having been a Texas state court judge, there are petitions and answers in Texas, and this was, and a counterclaim can be asserted in either one. This was a petition. This was not an answer. It was actually titled petition. They crossed that part out, as counsel said, to shorten the title. But it was clearly a counterclaim asserted in a petition, not in an answer. Okay. All right. Thank you. Reserved time for rebuttal. We'll hear from Ms. Milner. May it please the court. I'm Carly Milner, and I'm here for Zero Gravity. I would first like to address a couple of issues that opposing counsel raised and that the court inquired about. With respect to the dismissal order that was issued by Judge Hughes on June 4th, counsel misstates the holding in Kokonan. The holding in Kokonan, which is a Supreme Court case, is that to retain jurisdiction to enforce a settlement agreement, the district court must either by separate provision, such as a provision retaining jurisdiction over the settlement agreement, or by incorporating the terms of the settlement agreement in the order, make clear that the court is retaining jurisdiction. Emera Jett's position is that the district court must do both, that it must both incorporate the terms of the settlement and specifically retain jurisdiction. And apparently there is an added component that the parties must agree that the court can retain jurisdiction. Well, why was it appropriate for the court to maintain jurisdiction when the court didn't even know what the settlement agreement was? And no one was asking for the court. Why was that appropriate for the court to reach out and grab that in that sort of situation? Your Honor, in the May 12th hearing that Judge Hughes held, the parties indicated that the key issues had been resolved between them, that Emera Jett was going to return maintenance records to Zero Gravity, and Zero Gravity was going to return the engines to Emera Jett. And while the parties might have had other issues between them, those were the key points that the parties were concerned about. And in fact, in the motion to enforce the settlement that was filed by Zero Gravity, it was exactly that return of the maintenance records that was at issue. So there was no detailed settlement proposal before the court, but the court was aware on the record that the parties had reached this agreement about a mutual exchange. Continuing obligations. I'm sorry, Your Honor? Had continuing obligations as a part of the settlement. That's right, that the parties had agreed to do this going forward. And so that is what the court considered to be a settlement and was retaining jurisdiction to enforce. And that was the subject of the motion to enforce after that. In addition, this was an order titled Final Dismissal, and it was entered on June 4th, 2014. Emera Jett has never appealed that order. While I can understand the court's consideration of that order and its effect in determining whether jurisdiction existed following that order, I do believe that the consideration of the details of that order and whether it was correct is essentially closed and not available for appellate review because Emera Jett did not timely appeal. I would next like to address the issue of Emera Jett's Rule 41A dismissal and whether it was appropriate and effective. As the court mentioned a few minutes ago, the governing standard is state law. Emera Jett began this suit by filing a petition at state court on April 14th, obtained an ex parte TRO. On April 17th, the same day that Zero Gravity was served with Emera Jett's petition, Emera Jett filed its answer. I'm sure the court can understand that in this sort of situation where there's a TRO application, a TRO granted ex parte, the parties are simply trying to get their pleadings on file as quickly as possible and make sure they have the right content. And whether the title is everything it should be is not the top consideration. But if the court looks at the answer, which is on page 73 of the record, we can see all the components of an answer that are there. Under Texas Rule Civil Procedure 45, the answer needs to contain a short and plain statement of the defenses that the defendant is asserting. Then under Rule 85, the answer can contain any one or more of a number of items. It can include a general denial, it can include counterclaims, affirmative defenses, a number of other things. The rule doesn't say that the answer must include any of these things or multiple of them, but it may include any of them. But if it's called a petition and it doesn't include the basics of an answer, isn't it arguable that it's not? The Austin case that you cite has to do with a pro se person and they're trying to bend over backwards to say that it is. It's a very different context. Do you have a case where something's labeled a petition and it doesn't conclude the other elements of the answer that a Texas state court has ever held that was an answer? I don't have a case in the context of an answer. I do have a case, the E.E. Farrow case, where it did not involve a pro se party and the issue was whether the defendant had pled a counterclaim which it was not entitled to assert under the contract or whether, as the defendant continued to assert to the court, it had pled a failure of consideration. And the court said, it doesn't matter what you've called it. It doesn't matter what you're telling me it is today as far as the title. The court has to look to the substance of the pleading to determine what it is. But your counsel for your side, I don't know if it was you or not, was not arguing that it was an answer. Judge Hughes on his own decided that this was an answer. I mean, he came and said, you didn't ask for the bond. Quit telling me I don't have jurisdiction. I'll just keep the money. I could use it. You know I'm driving an old Toyota. Besides, they filed a claim for derivative close claim. Didn't they counterclaim? It says in Zero Gravity's application for TRO on that that Zero Gravity's entitled to declaratory relief and rightful possession and all that. It's a complete out of the blue, it appears, for Judge Hughes. You didn't brief this and ask for this. And by you, I mean collective you, whoever was. Yes, Your Honor. At the May 12th hearing, whether this was an answer or not was really not an issue that anyone thought the court was going to look at. And it wasn't something the parties felt like they needed to bring to the court. Because the parties at that time had essentially resolved their dispute. So there wasn't any need to brief that or take any further action. Well, that's why I don't understand that, you know, the courts have a lot on their plate. Why is the court reaching out and trying to keep this case at that time? I don't understand the context of the comments made by the district court. As best I can tell, Your Honor, and I was not personally present at that hearing, the district court was simply interested in maintaining jurisdiction to enforce the settlement that the parties had, the agreement that the parties said they had reached. Even though no one's there saying, Your Honor, you really need to stay in this case, we might have trouble later on. There's no one asking him to do that. Is that correct? That's correct. No one was asking him to do that. And I assume that this part I've read is, I assume it's a joke by the court about the Toyota. That's, I think we all assume that. Yes, Your Honor. But if we look back at the answer that Zero Gravity filed, it does have other components of an answer besides the counterclaim. In paragraphs 11 and 12, Zero Gravity specifically denies allegations in Amerijet's petition. And in the next couple of paragraphs, Zero Gravity asserts two affirmative defenses. Zero Gravity says that Amerijet's claims are barred because under the course of performance, Amerijet had to provide notice before it attempted to terminate this contract. And then in a second affirmative defense, Zero Gravity said that under the contract itself, Amerijet had to provide notice and that also the remedy that Amerijet sought was not permissible under the contract. And I do take your point that this looks in form perhaps more like a petition than an answer. It's a test petition. Under Rule 690 of the Texas Rules of Civil Procedure, when an application for a temporary restraining order has been filed and granted, if a party responding to that wants the court to dissolve it prior to the final hearing, the responding party can't simply file a general denial. The party has to file a verified pleading, which is what Zero Gravity did. So Zero Gravity had to go through and state the facts that it agreed with and state the facts that it denied, which it did, and verify those, which it did. And in addition, because the answer did include a counterclaim, it needed to include all the elements of a petition. The jurisdictional statement, a factual background, all of those things. So it was simply combined together and does have characteristics that are similar to a complaint in addition to the characteristics of the answer. Assuming, arguendo, that we agree with opposing counsel that the first case was dismissed by the court, how do you win your lawsuit regarding the anti-injunction, anti-suit injunction? If it's dismissed, don't they win if we see it that way? I think that if it had been dismissed and the court agreed that it was dismissed and nothing further had happened in the case until the anti-suit injunction, that might be true. But here, after Amerijet filed its Rule 41 notice, after Judge Hughes entered his final dismissal, the parties appeared before the court for several hearings. Both sides filed numerous pleadings with the court, and not only to address the motion to enforce the settlement, but to address other issues. Amerijet appeared before the court, filed a notice of appearance subsequent to these dismissals, and asked the court for affirmative relief on its own, voluntarily. Amerijet specifically asked the court at a hearing to help it resolve issues. It asked the court to order zero gravity to return certain parts that were located on the plane, which the court then ordered that relief and ordered zero gravity to return those parts. Amerijet raised other issues for the court, money that it alleged it was owed, and these issues relating to intellectual property rights. So... Who has those manuals and things now? Does your client have those in its position, or are they... There were really, I don't think this is particularly clear from the record, but there were two sets of manuals. There were physical manuals that were on the plane, which were returned by zero gravity to Amerijet. And as I understand it, what Amerijet is concerned about now is electronic copies of the manuals that it believes contain its intellectual property, and zero gravity asserts that those portions of the manuals are in fact zero gravity's intellectual property. So zero gravity has them, and they continue to have them. The electronic copies, that's correct. So... Amerijet re-invoked the jurisdiction of the court to the extent that the court lost jurisdiction. And this was an issue that the Fifth Circuit addressed in the Yeshvi Lakewood Church case. And in that case, the plaintiff brought suit in federal court in Texas, then dismissed the case under Rule 41. There was no question that that dismissal was effective. The plaintiff then went and filed suit in another federal court in another state. While that second case was pending, the plaintiff and defendant got together and said, we agree to have this case heard back in the first federal court in Texas. So the plaintiff, in reliance on that agreement, dismissed the second case again under Rule 41. And as the court knows, once a plaintiff dismisses a case twice under Rule 41, the plaintiff is barred from reasserting its claims. So the parties went back to the court in Texas and asked the court to reopen that case. The defendant, notwithstanding its agreement, said, hold on, you can't do that. You dismissed two cases under Rule 41. The first court has lost jurisdiction because you dismissed it under Rule 41. There's no way that this case can be opened. And this court said, the parties may not have fully thought this through on the procedural aspect of how the first case would be reopened, but the parties agreed to have this case heard before the federal court in Texas. And we are going to enforce that agreement and allow the district court to reopen that case and proceed. And here, by its conduct, Amerijet agreed to have this case heard in federal court, in Judge Hughes' court in Texas. It appeared before Judge Hughes, filed a notice of appearance, sought affirmative relief. So the same rule that the court applied in Yesh should apply in this case as well. And Amerijet incorrectly characterizes this as an issue of subject matter jurisdiction. Nowhere in Amerijet's pleadings does Amerijet identify any aspect of subject matter jurisdiction that's lacking. We know that there's diversity. Part of the reason we know this is because of the case that Amerijet filed in Florida that was transferred to the Southern District of Texas, in which Amerijet alleges diversity jurisdiction. It's undisputed that the parties are diverse and that the amount in controversy exceeds $75,000. The other aspect of subject matter jurisdiction is whether there is a justiciable case or controversy. We have adverse parties. We have a live dispute that's based on facts that have already occurred. Not some sort of perspective or advisory issue. And so there's simply no aspect of subject matter jurisdiction that's lacking here. Do we have authority to do what opposing counsel asks us to do if we did not agree with you and to remand the case with instructions to send it back to Florida on the other case that's not technically part of this appeal? I do not think that this court has the power to do that. Opposing counsel cites the All Writs Act, but there has been no petition for any sort of writ filed with respect to that case. And I do believe that to take any action with respect to that transferred case, the order in that case would have to be properly before this court and not brought in as a side issue in this case. In part because there's simply no record before this court on which the court could decide whether that case should properly be sent back to Florida or not. As you know from our briefing on the issue of the motion to stay, that second case and on the 28J supplemental briefing, we contest the other side's characterization of the order. It was a 1404A motion to transfer, and that is what the court granted. So I think it's fair to assume that the Florida District Court, in fact, granted it under 1404A and not for some other purpose or based on some other reasoning. And if the court doesn't have any further questions, I'll conclude. Thank you. Mr. Canning, we're back to you if you have a problem. I'll start with the last point again. We know what you said initially. Now you know what counsel opposite says, so if you win but. So is it just the in globo all writs act that you're invoking, or more specifically under that something that's played a case or something more than just saying the all writs act? Yes. In our supplemental letter that was filed a week ago Friday, we cited the Supreme Court's New York telephone case in support of this court having the authority to issue an order to effectuate the proper result here, which would be to retransfer in light of the fact that the Florida court transferred pursuant to the first filed rule, the very order that is under review in this court. So would we be doing that, or would be, if we were vacating and remanding on the first point, would we be doing that though with instructions to the district court to retransfer the case as opposed to us doing it as a matter of plenary? I'm not saying we are, I'm just asking. Yes. It would be remanding with instruction to retransfer, pursuant to this court's jurisdiction authority under the all writs act. But the New York telephone case involved a similar order of a district court to effect parties and claims that were not part of the suit that was on appeal. So this court does have authority under the Supreme Court's New York telephone case to direct the district court on remand to retransfer. And certainly that transfer was not under 1404. If you look at the district court, the Florida district court's order, it's patently clear that it was being transferred pursuant to the anti-suit injunction. The district court did not consider any of the 1404 factors. It simply said it wasn't convinced, and that was the word, wasn't convinced that the first filed rule didn't apply. And so it was transferring it back to the first filed court to determine what should happen to it. And that is what the case law in this circuit provides. Cato and Sutter Corp both say that when you have a colorable situation involving the first filed rule, that it is for the first filed court to decide whether the second filed case should be dismissed, transferred, retransferred, consolidated, or whatever should happen to it. So the Florida court was simply observing the operation of the first filed rule by transferring back to the first court. Now the Florida court actually directed that the case not only be transferred to the Southern District of Texas, but be transferred into the case that is on appeal here. The court specifically states that it should be transferred into that case number. So had that happened in accordance with what the Florida court ordered, there would be no question that this court could retransfer it because it would be within this case. So by failing to comply with the order and transfer it into the case that's on appeal, the district court appears to be, the Texas district court appears to be trying to evade the possibility of a retransfer order. But we believe that this court does have the authority to do that. With respect to the requirements for retaining jurisdiction, the Coconin Supreme Court case clearly says that there must be consent of all the parties, and the settlement agreement's terms must either be expressly incorporated or embodied in the dismissal order. That's at 381 to 82 of the Coconin decision. So we think, and finally I guess, Yes Music, we did not agree to proceed in the Southern District of Texas. In Yes Music, there was a stipulation on the record before the district court that the parties would proceed in the Texas court. Here, we showed up at a hearing because we were ordered to show up and we raised the concerns we had since we were talking about the concerns of zero gravity. But we did not agree that the court had jurisdiction and we did not agree to proceed in that case. And the Supreme Court and the Insurance Company of Ireland has made quite clear that you can't acquire subject matter jurisdiction by acquiescence or consent. And so by complying with the judge's order, even though we thought that it was unlawful, we did not vest the court in subject matter jurisdiction. All right. Thank you, counsel, both sides for your argument.